41 N.J. Super. 1 (1956)
124 A.2d 30
JOHN M. GARDNER AND CHARLES E. GARDNER, PLAINTIFFS-RESPONDENTS,
v.
ROSECLIFF REALTY CO., INC., ETC., AND IRVING ROSENTHAL, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued June 4, 1956.
Decided July 9, 1956.
*5 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Aaron Lasser argued the cause for plaintiffs-respondents (Messrs. Lasser and Lasser, attorneys).
Mr. Frank G. Schlosser argued the cause for defendants-appellants (Mr. William George, attorney).
The opinion of the court was delivered by CLAPP, S.J.A.D.
Following certain proceedings in this court and the trial court, which need not be referred to here, the complaint was amended below so as to set out in four counts the following causes of action, all to recover damages: the first count, against defendant Rosecliff Realty Co., Inc., for breach of contract; the second count, against defendant Irving Rosenthal, Rosecliff's president, for breach of his warranty that he was authorized by it to sign the contract; and the third and fourth counts, against both defendants for deceit. At the close of the trial, the court *6 below dismissed the first two counts as to both defendants and the third and fourth counts as to Rosenthal. A verdict of $15,000 was returned against Rosecliff for deceit. Rosecliff appeals.
Rosecliff owns and operates the Palisades Amusement Park at Edgewater, New Jersey. Faced with a loss of revenue, when ferry service between Edgewater and New York, N.Y. was discontinued, Rosecliff, through Rosenthal, entered into negotiations with plaintiffs to induce them to establish another ferry service between those points. The alleged deceit, in substance, was this: Rosenthal on behalf of his company falsely represented to plaintiffs that it could (that is, had the right to), and moreover would, make available to them, for the purposes of the new ferry service, the dock of the Public Service Coordinated Transport Company at Edgewater. Allegedly relying thereon, plaintiffs (through John M. Gardner) entered into the above-mentioned contract with Rosecliff, chartered a yacht located in Florida, reconditioned it in order to comply with the contract and then transported it from Florida to New York. At about the time it reached New York, Rosenthal informed plaintiffs (so they testified) that Public Service was to run buses between New York and Edgewater and it would not allow plaintiffs to use the dock. To the plaintiffs, Rosenthal said (according to the testimony of one of them) "I have buses running now; I have no need for the boat."
The trial court dismissed the case against Rosenthal with respect to the fraud, on the ground that an agent making a fraudulent representation within the scope of his authority is immune from personal liability. This is error, and no one pretends to defend it. Martin v. Baldwin, 90 N.J.L. 241, 244 (E. & A. 1917); see Bocchino v. Cook, 67 N.J.L. 467, 469 (Sup. Ct. 1902); Restatement of Agency, § 348. However, Rosecliff in its first point before us now claims that the dismissal of the case against Rosenthal at the close of the trial required a dismissal of the case against Rosecliff at the same time. It relies on authorities, holding (subject to exceptions not pertinent here) that a court or jury exonerating *7 an agent on the ground that his conduct was not tortious, cannot hold the principal responsible for that conduct under the doctrine of respondeat superior. The inconsistency in the finding or verdict vitiates it. See authorities cited in Kelley v. Curtiss, 16 N.J. 265, 270 (1954); cf. Freint v. Gilmore, 110 N.J.L. 170, 172 (E. & A. 1933), a case of fraud. It seems to have been said on the oral argument here that since plaintiffs have not appealed from the judgment absolving Rosenthal, we have now no alternative but to absolve Rosecliff too. See Vaniewsky v. Demarest Brothers Co., 106 N.J.L. 34, 37, 38 (Sup. Ct. 1929), affirmed 107 N.J.L. 389 (E. & A. 1931).
It is to be observed immediately that the point was not raised below on the motion to dismiss. But, aside from that, it must be obvious that there is no inconsistency in the record here. The trial court proceeded upon the notion (erroneous, as stated) that the law invests an agent with immunity from all responsibility for his own fraudulent utterances, provided he acts within the scope of his authority. The action taken below, exculpating the agent because of such an immunity, and the action taken there to hold the principal for the fraud are in no way contradictory. A principal
"may be liable for an act as to which the agent has a personal immunity from suit." Restatement, Agency, § 217(2).
More may be said on the point, but this disposes of it.
There is another point involved here, or perhaps it is another aspect of the same point. On the new trial allowed (as will appear herein) as to damages, the question may arise whether, by virtue of the doctrine of collateral estoppel, the judgment in favor of Rosenthal precludes plaintiffs' recovery from Rosecliff. See Kelley v. Curtiss, 16 N.J. 265 (1954); cf. Carter v. Public Service Gas Co., 100 N.J.L. 374 (E. & A. 1924); Templeton v. Scudder, 16 N.J. Super. 576, 584 (App. Div. 1951); Solimine v. Hollander, 128 N.J. Eq. 228, 297 (Ch. 1940); Developments in the Law, Res Judicata, 67 Harv. L. Rev. 818, 861-863 (1952). The short *8 answer is that the judgment for Rosenthal was based on what the trial court conceived to be (as above stated) a personal defense or immunity relieving him of liability; a judgment for an agent resting on such a defense clearly does not bar a subsequent litigation by the same plaintiffs against the principal. See Restatement, Judgments, § 99, relied upon in Kelley v. Curtiss, supra; cf. § 96 comment g.
Rosecliff's second point (if we may divide up its argument thus) is that the motion it made below to dismiss the case should have been granted because plaintiffs could not obtain dockage facilities in New York City. The contention is that any damage plaintiffs suffered in this matter is attributable to this circumstance, quite apart from defendants' alleged deceit with respect to the dock in New Jersey.
It could be argued with considerable force on Rosecliff's behalf that the contract  reading it in the light of the circumstances of the parties and of their respective functions under the contract  placed upon plaintiffs an obligation to secure these dockage facilities in New York before April 21, 1951 (when the ferry service was to commence) or, more accurately, within a reasonable time thereafter. Let us assume that to be so. Nevertheless, on April 20, 1951 Rosenthal informed plaintiffs (so Charles E. Gardner testified) that the Edgewater dock was unavailable to them and that besides he didn't need the ferry; and after that, of course, the plaintiffs were not called upon to make any effort to obtain dockage in New York. The question on the motion to dismiss then comes down to this: did the plaintiffs have it within their power prior to April 20 to secure the New York facilities within the reasonable time above stated? The proofs rather indicate that they did (provided they would agree to a certain modification in an offer they had already made for such facilities). In any event, there certainly was no basis for the court holding to the contrary as a matter of law. The motion to dismiss the case on that ground was properly denied.
Defendants' third point may be disposed of summarily. The question whether or not Rosenthal knowingly *9 and intentionally made the misrepresentation of fact, above stated, was clearly a matter to be determined by the jury.
The fourth question goes to Rosecliff's responsibility for Rosenthal's misrepresentation. Rosecliff relies on Judge Jayne's instructive opinion in Mesce v. Automobile Association of New Jersey, 8 N.J. Super. 130 (App. Div. 1950). As we understand the law now to be (Rosecliff takes the same view of it), a principal may be held, in an action of deceit, for damages resulting from his agent's fraudulent representation, where the principal has put the agent in such a position that a person of ordinary prudence, conversant with business uses, would be justified in presuming that the agent has the authority to make the representation. Restatement of Agency, §§ 257, 261; Seavey, Studies in Agency, 261, 262, 273-279 (1949). Rosecliff's contention on this score is that the case against it should have been dismissed because there was no proof establishing that it lay within the scope of Rosenthal's apparent authority to make the misrepresentation alleged here.
However, this point was not put in issue below. Fischetto Paper Mill Supply v. Quigley Co., 3 N.J. 149, 155 (1949). Quite the contrary. The attorney for Rosecliff and Rosenthal (at one juncture in the trial where reference was being made to the contract) placed on the record this admission:
"Now since the issue is before us [, it is] now admitted that the Rosecliff Realty Company acted through Mr. Rosenthal, as its officer."
Later in the trial, in answer to the judge's question, the same attorney stated for the record in connection with the charges of fraud contained in the third and fourth counts of the complaint, that Rosenthal admitted "he was then acting on behalf of the corporation." Thereafter, in the judge's instruction to the jury, after referring to the claim against Rosecliff for deceit, the judge stated the matter thus:
"It has been admitted in this case that Mr. Rosenthal was acting in behalf of the Company during the entire time of these negotiations *10 or the consummation of this agreement and the actions relating thereto."
No objection was taken to this. In the face of that record, Rosecliff cannot now be heard to say that Rosenthal lacked authority.
The fifth point goes to the weight of the evidence bearing on the issue of Rosecliff's liability. The point is obviously without merit. The plaintiffs and Rosenthal told sharply divergent stories as to the fraud, and the jury believed the plaintiffs.
But the final point, that the award of $15,000 is unsupported by the evidence and is excessive, presents a serious question. Rosecliff's argument on this phase of the case overlooks Zeliff v. Sabatino, 15 N.J. 70, 74, 75 (1954). It was settled by that opinion, as more fully stated there, that the law fixes damages in an action for deceit according to one of two measures, depending (except where the plaintiff is content with damages on the lesser scale or where the representation amounts to a warranty) on the dictates of justice as viewed by the court in the particular case. Under the first of these measures, the court will award to the plaintiff such damages as would effect restitution  that is, in this case, damages equal to the amounts paid out of pocket by the plaintiffs for chartering the boat, etc. (the proofs show a total of $4,974.97  Rosecliff overlooks the items of $32.94, $29.31 and $25.41), less the net amount earned by plaintiffs through the use of the boat on sightseeing parties conducted during 1951 (apparently $1,765, less certain expenses, the proof of which was improperly held inadmissible). Under the second of these measures the court will award such damages as will give to the plaintiffs the "benefit of the bargain" held out to them by the perpetrator of the fraud, thereby requiring him to make the representation good  in other words, the court will award damages equal to that which plaintiffs would have received if the representation had been true; however from the sum so computed, there must also be deducted the net amount earned, as above stated, through the sightseeing parties. But damages cannot be *11 awarded according to the measure second stated  giving to plaintiffs the "benefit of the bargain"  unless the amount of that benefit can be established by the proofs with sufficient certainty.
Plaintiffs ask (see the pretrial order) for their out-of-pocket expenses, and also for the profits they would have received if they were entitled to the benefit of the bargain. They cannot have both, for the expenses were incurred in order to earn the profits; and to allow plaintiffs both, would give them a "double" recovery. Cf. Holt v. United Security Life Ins. Co., 76 N.J.L. 585, 597, 599 (E. & A. 1909); Feldman v. Jacob Branfman & Son, 111 N.J.L. 37, 42 (E. & A. 1933).
In the present case, we conclude, plaintiffs may recover the benefit of the bargain, if they are able to establish with reasonable certainty the profits that would be theirs under that bargain. If they are not able to do so, they may recover damages according to the measure first above stated.
So, we must ask ourselves, was the loss of profits proved with reasonable certainty? Under the terms of the contract, Rosecliff guaranteed plaintiffs a total gross income for 1951 of not less than $14,000 (an average of $100 a day or 400 round trip passengers a day, each paying 25 cents as per the contract, for the season of 140 days). There is no uncertainty here. It might be interpolated that the estimate, referred to in the testimony, of 500,000 round trip passengers a year  which would mean $125,000 (25¢ round trip) to $150,000 (15¢ each way  see the contract) gross income from this new venture  was plainly so speculative as not to be worthy of consideration. Weiss v. Revenue Building & Loan Ass'n, 116 N.J.L. 208, 212 (E. & A. 1935).
But  to return to the $14,000  something must be deducted therefrom for expenses. We think there was properly deductible such expenses as would have been entailed in plaintiffs' contemplated operations, if there had been, on an average, 400 round trip passengers a day for the season. The principal difficulty with the present record arises out of the testimony estimating those very expenses. Any reasonable *12 method of estimation will suffice. 5 Williston, Contracts (rev. ed. 1937), §§ 1345, 1346, see also § 1392. One of the plaintiffs, testifying as an experienced ferry boat operator (cf. De Ponte v. Mutual Contracting Co., 18 N.J. Super. 142, 147 (App. Div. 1952); Casler v. Weber, 27 N.J. Super. 396, 399 (App. Div. 1953)), said this:
"Q. What were your expenses per day? A. Our expenses would be very small on that boat. They would be approximately $50 per day [that is, $7,000 for the season of 140 days].
* * * [25 lines later]
Q. Now, I ask you, what would be your expenses per day? A. About $52,000 for the season."
No attempt was made to clear up this contradiction. More than that, the testimony is in utter confusion at that point in the case. Perhaps the estimate of $50 a day, or $7,000 for the season, was based on 400 round trip passengers a day; and the estimate of $52,000 a season was based on 500,000 round trip passengers for the season, or 3,571 passengers a day. But this is all speculative. We do not in fact know what the $50 a day is based on. Besides, counsel in his questioning seems to have been referring to only 100 passengers a day when the witness testified to expenses of $52,000 for the season. The opinion of an expert should be made to rest upon facts. Rempfer v. Deerfield Packing Corp., 4 N.J. 135, 144, 145 (1950). It is true that there was no objection to the estimate of $50 a day or of $52,000 a season and no cross-examination thereon and, more than that, the point is not even mentioned by Rosecliff on this appeal. But Rosecliff does argue very insistently that the verdict is not supported by the evidence and is excessive.
Besides, the charge of the court (also not objected to in this respect) furnished the jury with no guide at all respecting the measure of the damages allowable under the benefit-of-the-bargain theory. The judge merely instructed the jury that if they found that plaintiffs were entitled to recover, the verdict should be in such an amount as would compensate plaintiffs "for every wrong which was the natural and proximate result of the fraud." He added that in arriving at that *13 amount the jury should take into consideration the expenses totalling $4,974.97. This in a word was the whole charge on the subject.
In view of the state of the record with respect to the amount of expenses, and quite aside from the charge, we are obliged to conclude that, if we give to plaintiffs the benefit of the bargain, there is no intelligible evidence whatever supporting the verdict of $15,000. On the other hand, of course, the out-of-pocket losses do not amount to a third of this figure. Whatever the measure of damages, it appears clearly and unequivocally that the trial judge erred when he denied a new trial.
There must be a new trial, but we think it should be limited to damages. It is to be borne in mind that if we give to plaintiffs the benefit of the bargain and if we assume that their expenses properly calculated would come to the above-mentioned figure of $7,000 a year, the verdict of $15,000 may not be so very irrational; the jury may have calculated the damages by deducting from the guarantee of $14,000 a year, these expenses of $7,000, also deducting the income of $1,765 received from sightseeing parties, and, furthermore taking into account the option to renew (referred to later in the opinion) for two more years.
Furthermore, it is to be observed that the issue as to damages is fairly separable from the other issues in the case, and that the evidence on the other issues is of ample strength to sustain the verdict thereon. Taking things, all in all, we are left with a conviction that, if we view the verdict in the light of the judge's charge, the jury's error with respect to the verdict is not indicative of a mistake, prejudice, passion or partiality infecting its determination on the other issues. Kress v. City of Newark, 8 N.J. 562, 576 (1952).
Since the case must go back for a new trial we should take note of the clause in the contract which gives the plaintiffs (or rather John M. Gardner, on their behalf) the option of renewing the contract in 1952 and 1953. In considering plaintiffs' damages, the court on the new trial must ask itself whether the chance of a renewal of the contract by the plaintiffs *14 in 1952 and 1953 was so remote or speculative a matter as to require a rejection of plaintiffs' claim to damages for those years. We do not decide the question, because it must be resolved on the proofs presented to the court on the new trial. However it is to be noted that at the trial leading to the present verdict, one of the plaintiffs testified that before the contract was drawn
"We [the witness and Rosenthal and perhaps Rosecliff's attorney] discussed the guarantee, the minimum guarantee. I said that we would need that for three years instead of one or two, and I said because one year we could not complete our obligation on the boat which would take us possibly three years and we would want three years as a minimum."
It may in some situations be obviously questionable whether a plaintiff should receive damages, measured by profits realizable under an unexercised option to renew a contract. However, in this case if the proofs on the new trial with respect to this option are the same as those before us now, we think it would clearly be open to the jury to find that the damages for the entire three years were within Rosecliff's contemplation at the time it committed the fraud and were a part of the bargain held out to them by Rosecliff. Crater v. Binninger, 33 N.J.L. 513, 517 (E. & A. 1869); Feldmesser v. Lemberger, 101 N.J.L. 184, 187 (E. & A. 1925).
For the reasons above stated, the judgment will be reversed and a new trial ordered as to damages.