162 N.J. Super. 138 (1978)
392 A.2d 596
SWISS VILLAGE ASSOCIATES, PLAINTIFF-RESPONDENT,
v.
THE MUNICIPAL COUNCIL OF THE TOWNSHIP OF WAYNE, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 1, 1978.
Decided July 31, 1978.
*139 Before Judges FRITZ, BOTTER and ARD.
*140 Mr. Frank Scangarella argued the cause for appellant (Mr. Lawrence D. Katz on the brief; Ms. Laura J. Lande on the reply brief).
Mr. John E. Nemetz, Jr. argued the cause for respondent (Mr. Charles Marks, of counsel and on the brief).
PER CURIAM.
Plaintiff applied to the Wayne Township Planning Board "for a change in the zoning" of a tract of land owned by it to "a Planned Unit Development Zone wherein four high rise residential apartment buildings" were proposed. The planning board rejected the application. Plaintiff appealed to the board of adjustment, which concurred in the determination of the planning board. Plaintiff brought a prerogative writ action challenging the rejection of its proposal. The trial judge wrote the following letter to counsel for the parties:
As I recall the discussion at our last conference it was suggested that the court defer the question of whether the plaintiff should be required to exhaust his statutory remedy of application for a variance.
Instead, it was suggested that the parties immediately attack the issue presented by the plaintiff that in light of So. Burl. Cty. N.A.A.C.P. v. Tp. of Mt. Laurel, 67 N.J. 151 (1975), and specifically the first paragraph on page 174, that the Wayne zoning ordinance is unconstitutional and is invalid as it bears upon the zoning statutes, in that it makes no provision for upper middle income and luxury high-rise apartments of high density per acre usage as distinguished from garden apartment construction which is permissible under the ordinance and has resulted in the construction of approximately 4,000 of such housing units rented to persons of higher than medium income.
I would suggest that motions be made by the respective parties in the above areas supported by briefs and that the same be sent to my chambers within three weeks.
Summary judgment motions were made and argued by the parties.
The trial judge decided the matter in an oral opinion. He first determined plaintiff had standing to attack the *141 ordinance. He then specifically rejected any equal protection argument in connection with this application "concerned with luxury apartments," saying,
And when considering the problems of the wealthy in American society, a different focus must be taken from other cases which involve wealth classifications. * * * Here, even though housing may be an important and even a fundamental interest, there's been no demonstration of an inability to pay for this benefit or an absolute deprivation.
He also rejected application of his concept of South Burlington Cty. N.A.A.C.P. v. Mt. Laurel Tp., 67 N.J. 151 (1975), cert. den. and app. dism. 423 U.S. 808, 96 S.Ct. 18, 46 L.Ed.2d 28 (1975), saying,
Now, I don't feel that the plaintiff has sufficiently sustained his position from the regional point of view. Secondly, where the plaintiff speaks in terms and in his argument of the fact that a municipality must make provision for varied and choice of accomodation [sic] for all areas of the population, I think that the plaintiff is taking that out of context. As I see the argument in the Mt. Laurel case, the approach was to provide for relief for the poor and the underprivileged, those with low and moderate income and when they said, when the Court said in its decision that all areas of society must be accomodated, what they really in effect were saying was, since other areas, higher income areas have been accomodated, it will be essential to accomodate low income areas so that all areas of society should be accomodated. And having arrived at that point wherein [sic] my judgment we cannot sustain the Constitutional argument involved in Mt. Laurel, I am not in a position where I should undertake to make a determination of whether Wayne is a developing municipality in the light of the Constitutional argument.
Having thus considered arguments which did not support an attack on the zoning ordinance, he then came "to the question as to the validity of the ordinance from the point of view of the zoning statute." He phrased that question thusly:
Now, the municipality has failed to make realistic provision for hi-rise apartment houses and the question is, must the zoning ordinance thereby be declared invalid?
*142 Holding that "social consequences have become a part of zoning considerations," and concerned by the exclusion of high-rise apartments from Wayne Township, he concluded,
* * * Is not regulation rather than prohibition the appropriate technique for obtaining a balanced and attractive community? Hi-rise apartment living is a perfectly respectable kind of housing accomodation [sic]. Should our democracy provide the opportunity to live in a home of accepted standards that one can afford? Yes; even a hi-rise apartment which only higher than average income earners can afford?
Now, since the municipality has not satisfied me that all apartment buildings are offensive to the public good, I could not help but come to the conclusion that the restrictive ordinance was discriminatory and was enacted for the purpose of creating a barrier against a fear of disruption of an imagined chosen way of life. * * *.

* * * * * * * *
Zoning regulations like any police power ordinance, must promote public health, safety, morals or public welfare. A zoning ordinance which is contrary to public welfare is invalid under the Statute. I have been unable to find Wayne's exclusion among the purposes of zoning designed by N.J.S.A. 40:55-32. With respect to the limited issue raised in this case, the question of provision for hi-rise apartments, and I'm using the term fully as hi-rise apartments, I find such use to be entirely compatible with the circumstances of Wayne in the light of the desiderata of our zoning statute. And the ordinance is invalid for prohibiting such reasonable use of an acceptable mode of housing. Wayne must make realistically possible, a variety and choice of housing including hi-rise apartments.
Defendant appeals. We reverse.
We note at the outset that the expressed observation of the judge that "the restrictive ordinance was discriminatory and was enacted for the purpose of creating a barrier against a fear of disruption of an imagined chosen way of life" is obviously simply a conclusion at which he arrived from considering the ordinance. There is no factual premise articulated for this conclusion, nor is any apparent. Even if there were, it is doubtful that such a significant factual concern should be resolved on motions for summary judgment. See Jackson v. Muhlenberg Hospital, 53 N.J. 138 (1969).
*143 The role of a court in reviewing the validity of a zoning ordinance has been the subject of extensive judicial comment. A precise distillation is to be found in Bow & Arrow Manor v. West Orange, 63 N.J. 335 (1973), in language recently quoted at length in the case of Pascack Ass'n, Ltd. v. Washington Tp. Mayor & Council, 74 N.J. 470 (1977):
It is fundamental that zoning is a municipal legislative function, beyond the purview of interference by the courts unless an ordinance is seen in whole or in application to any particular property to be clearly arbitrary, capricious or unreasonable, or plainly contrary to fundamental principles of zoning or the statute. N.J.S.A. 40:55-31, 32. It is commonplace in municipal planning and zoning that there is frequently, and certainly here, a variety of possible zoning plans, districts, boundaries, and use restriction classifications, any of which would represent a defensible exercise of the municipal legislative judgment. It is not the function of the court to rewrite or annul a particular zoning scheme duly adopted by a governing body merely because the court would have done it differently or because the preponderance of the weight of the expert testimony adduced at a trial is at variance with the local legislative judgment. If the latter is at least debatable it is to be sustained. Kozesnik v. Montgomery Twp., 24 N.J. 154, 167 (1957); Vickers v. Tp. Com. of Gloucester Tp., 37 N.J. 232, 242 (1962), cert. den. and app. dism., 371 U.S. 233, 83 S.Ct. 326, 9 L.Ed.2d 495 (1963). [63 N.J. at 343.]
In undertaking this function, a judge must remember that "the judicial role * * * is tightly circumscribed. There is a strong presumption in favor of its [i.e., the zoning ordinance] validity, and the court cannot invalidate it, or any provision thereof, unless this presumption is overcome by a clear showing that it is arbitrary or unreasonable." Harvard Ent., Inc. v. Madison Tp. Bd. of Adj., 56 N.J. 362, 368 (1970); Johnson v. Montville Tp., 109 N.J. Super. 511, 519 (App. Div. 1970). If the question raised is "fairly disputable," Bow & Arrow Manor v. West Orange, supra, 63 N.J. at 345, or "debatable," Vickers v. Gloucester Tp. Comm., 37 N.J. 232, 243 (1962), cert. den. and app. dism. 371 U.S. 233, 83 S.Ct. 326, 9 L.Ed.2d 495 (1963); Johnson v. Montville Tp. supra, 109 N.J. Super. at 519, then the judgment of the municipality should be sustained.
*144 In considering an attack on a zoning ordinance burdened by this presumption, the test with respect to exclusionary zoning is whether it bears a reasonable relationship to the purposes which zoning is intended to promote. Napierkowski v. Gloucester Tp., 29 N.J. 481, 492 (1959). Put another way, "it is merely required that there be a substantial relation between the restraints put upon the use of the lands and the public health, safety, morals, or the general good and welfare in one or more of the particulars involved in the exercise of the use-zoning process specified in the statute [N.J.S.A. 40:55D-2]. [Citation omitted.]" Pascack, supra, 74 N.J. at 483. The "discretionary decision by local legislative bodies" in this respect is to be accorded "breadth in the legitimate range." Id. at 482. The reason for the circumscribed nature of the judicial review is to be found in the deference due to those legislatively and politically entrusted in the first instance with the decision to determine how best the general welfare may be served by the zoning ordinance. Id. at 485.
It is now clear that a municipality need not provide for every use within its borders. Pascack, supra; Vickers v. Gloucester Tp. Comm., supra; Nigito v. Closter, 142 N.J. Super. 1 (App. Div. 1976), certif. den. 74 N.J. 265 (1977). We mention this postulate even though Wayne in fact does not wholly exclude multifamily housing.
Finally, we are satisfied that if a municipality may legitimately exclude all multi-family housing (Pascack, Nigito, both supra), circumstances may easily exist in which one of several modes of multi-family housing (e.g., high-rise apartments, as here) may also be legitimately excluded.[1]
Accordingly we are unwilling to hold as a matter of law, as did the judge below on the motions for summary *145 judgment, that the Wayne ordinance is invalid because it prohibits "such reasonable use of an acceptable mode of housing." The judgment of the trial judge in regard to the "acceptability" of high-rise apartments, without more, must give way to the judgment of those elected to make that decision and into whose hands the Legislature has placed the power. High-rise apartment living may indeed be a "perfectly respectable kind of housing accommodation" as the trial judge believes, but unless arbitrary action is demonstrated on a more convincing ground than mere exclusion, the presumption of validity is not overcome, and whether "regulation rather than prohibition [is] the appropriate technique for obtaining a balanced and attractive community" is to be left to "discretionary decision by local legislative bodies."
Reversed and remanded for the entry of judgment in favor of defendant.
NOTES
[1] In fairness to the trial judge it should be observed that at the time of his determination Mt. Laurel had been decided but Pascack had not.