838 A.2d 534

ROSE MANZO, AN INCAPACITATED PERSON BY THE GUARDIAN OF HER PROPERTY, AND MORGAN ESTATES, L.L.C., A NEW JERSEY LIMITED LIABILITY COMPANY, PLAINTIFFS. v. THE MAYOR AND TOWNSHIP COUNCIL OF THE TOWNSHIP OF MARLBORO AND MARLBORO TOWNSHIP, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY LOCATED IN MONMOUTH COUNTY, NEW JERSEY, DEFENDANTS.

Superior Court of New Jersey
Law Division Monmouth County

Decided February 28, 2002.

*James Graziano*, for plaintiff Rose Manzo (*Wolff & Samson*, attorneys).

*Scott J. Basen*, for plaintiff Morgan Estates (*Mehr & LaFrance*, attorneys).

*Dominick M. Manco*, for defendants (*McLaughlin Bennett Gelson & Cramer*, attorneys).

OHAGAN, ROBERT W., J.S.C.

Plaintiffs Rose Manzo and Morgan Estates are the owner and contract purchasers, respectively, of premises situated in Marlboro Township, described as Lot 227 in Block 225 in the Township's tax records, which consists of not less than 167 acres. (It is noted plaintiffs contend the premises measure 170 acres.) The property is divided into quadrants by the confluence of streams and perhaps drainage ways which flow into the property. Such water ultimately drains into Big Brook. Big Brook runs within the northerly boundary of the property and, thereafter, streams through Colts Neck Township flowing ultimately into the Swimming River Reservoir, a source of potable water for thousands of Monmouth County households but not those in Marlboro Township. That is to say Marlboro Township secures its potable water from other sources.

Nearby, the premises are bounded in part by residential subdivisions developed at densities consistent with that allowed under the R–30/20 zone which regulated use of the subject property until August 19, 1999. The untreated water run-off (i.e. the drainage ways above referenced) from such upstream residential developments, according to plaintiffs, drains onto the subject property. The evidence established that these developments, for the most part, were built as long as twenty-five to thirty years ago.

The premises are bounded, as well, by the grounds of the Marlboro Township High School and by Route 79.

Since August 19, 1999, the property, except for a small portion along Route 79 is zoned for low density residential development. The avowed purpose of the ordinance, adopted on August 19, 1999, was to protect Big Brook. In that connection it is to be noted that both upstream and downstream of the plaintiffs' properties, lands adjacent to Big Brook are similarly zoned for low density residential development. In part, elsewhere along Big Brook, the Township has used SPCR standards, other times standards attendant to the R–80 zone (2 acre zoning), the MZ (Municipal Open Space Zone) and the A/LC Zone (minimum lot size, 10 acres), to protect Big Brook. Not too far downstream of the subject premises is situated the first SPCR zone, bounding Big Brook, at which the Township allowed increased density (i.e. .8 dwelling units per acre as opposed to .43 dwelling units per acre, as mandated here) in return for the developer's contribution of a hefty sum to the Township's fund for development of affordable housing.[1]

On August 19, 1999. the Marlboro Township Council, on final reading, adopted the Stream Corridor Preservation Residential District, hereafter SPCR II zone. For the most part, the SPCR II zone regulates plaintiffs' property and allows development as above noted at the rate of .43 dwelling units per acre. Ordinance 1999–29 allows for 80,000 square foot lots, but, importantly, provides for a cluster option at which 25,000 square foot lots can be developed, although the allowed density remains at .43 dwelling units per acre.

There is no need for the court to here consider the extensive testimony concerning proposed development at the site of the former Marlboro State Psychiatric Hospital which is upstream, so to speak, from plaintiffs' property. That property, at least for now, is in State ownership and any plans the Township might have concerning its usage appeared to be in their embryonic stage.

[1] This contribution was in keeping with the rules of the Council on Affordable Housing (COAH).

Plaintiffs challenge the Zoning Ordinance on several grounds, contending:

1. The Zoning Ordinance is inconsistent with the Township's Master Plan.

2. The ordinance represents fiscal zoning.

3. The Township improperly seeks to reduce density of residential development.

4. The ordinance violates the Federal Fair Housing Act as it discriminates against families with children.

5. The means used by the Township to achieve its stated goal are unreasonable. Indeed, plaintiffs scoff at the Township's stated grounds to support the ordinance and contend that, at best, same are pretextual.

For reasons hereafter set forth, the court denies plaintiffs' challenge as it concerns the cluster provisions of the SPCR II zone.

Only the last stated contention, in the context of the factual pattern that underlies this case, has even facial validity and will be discussed at length hereafter.

The principles that must guide the court's resolution of this matter have long been recognized and bear repeating.

That is, the court must start with a presumption that the Township's ordinance is valid. *Manalapan Realty v. Tp. Committee,* 140 *N.J.* 366, 380, 658 *A.*2d 1230, 1238 (1995) (quoting *Bow & Arrow Manor v. Town of West Orange,* 63 *N.J.* 335, 343, 307 *A.*2d 563, 567 (1973)). Further, it must be assumed that the Township adopted the ordinance for proper reasons, *Kramer v. Bd. Of Adjust. Sea Girt,* 45 *N.J.* 268, 212 *A.*2d 153 (1965), and on reasonable grounds. *Id.* at 296, 212 *A.*2d at 169. That is to say, the court must assume proper motives on the part of the Township officials in the adoption of the ordinance. *Id.* It is not the court's role to question the wisdom of the governing body in its adoption of the ordinance. *Mt. Olive Com. v. Tp. of Mt. Olive,* 340 *N.J.Super.* 511, 533, 774 *A.*2d 704, 717. That is, no grounds exist to overturn the ordinance merely because the court or, indeed, anyone else would have enacted a different ordinance. *Swiss Village Assocs. v. The Mun. Coun. of Wayne Tp.,* 162 *N.J.Super.* 138, 392 *A.*2d 596 (App.Div.1978). Stated another way, courts

have long recognized that different developments' schemes might be appropriate for a given property. *See Id.* It is only when the ordinance under consideration is arbitrary, capricious or unreasonable in its impact on plaintiffs' property that a court might overturn it. *Pheasant Bridge Corp. v. Township of Warren,* 169 *N.J.* 282, 289, 777 *A.*2d 334 (2001). Of course, the ordinance must be in compliance with the purpose clause of the Municipal Land Use Law, *N.J.S.A.* 40:55D–2; *Id.; Med. Ctr. v. Princeton Tp. Zoning,* 343 *N.J.Super.* 177, 213, 778 *A.*2d 482, 504 (App.Div.2001).

■ If there is any reasonable basis on which to uphold the ordinance, the court may not overturn it. *Zilinsky v. Zoning Bd. of Adj. of Verona,* 105 *N.J.* 363, 369, 521 *A.*2d 841, 844 (1987). even though, if it were in charge, it would have enacted a different ordinance. *Jantausch v. Borough of Verona,* 41 *N.J.Super.* 89, 104, 124 *A.*2d 14, 22 (Law Div.1956). *aff'd* 24 *N.J.* 326, 131 *A.*2d 881 (1957).

Saving until last plaintiffs' contention that the means used by the Township to achieve its desired ends constitute gross overreaching, plaintiffs' contentions will be hereafter briefly discussed.

■■ No extended discussion is necessary as it concerns plaintiffs' argument that the ordinance violates the Federal Fair Housing Act. 42 *U.S.C.A.* § 3601, et seq. By no means, under the circumstances of this case, can it be said this Township has discriminated against children, a protected class. *See United Property Owners v. Belmar,* 343 *N.J.Super.* 1, 777 *A.*2d 950 (App.Div.2001). Rather, the ordinance cuts across all segments of society in its reduction in density. The Federal Fair Housing Act ordinarily cannot and should not be the engine that drives resolution of zoning disputes, *see Cherry Hill Tp. v. Oxford House,* 263 *N.J.Super.* 25, 621 *A.*2d 952 (App.Div.1993), especially those not involving discriminating action against families with children.

■ As to alleged inconsistency with the Township's Master Plan, plaintiffs ignore the specific language within the Master Plan which recognizes the need to reduce density at the subject proper-

ty in order to protect Big Brook and ultimately the Swimming River Reservoir and ignores, as well, the specific zoning recommendation for development at the subject site largely followed by the Township. Surely, plaintiffs ignore the Planning Board's resolution adopted after first reading of the ordinance and prior to its final adoption. That is, the Planning Board, by resolution, declared ordinance 1999–29 to be consistent with the Master Plan. *N.J.S.A.* 40:55D–26. Rather, plaintiffs focus, so to speak, on certain general policies espoused in the Master Plan. That is, the Master Plan recommends in-filling of neighborhoods or areas of the Township when the same are within, or abut developed areas. Similarly, the Master Plan recommends that the zoning of undeveloped sections of the Township be consistent with the developed character of nearby properties. This goal echoes the requirements of the Municipal Land Use Law. *N.J.S.A.* 40:55D–62; *see also Speakman v. Mayor and Council of North Plainfield,* 8 *N.J.* 250, 256–57, 84 *A.*2d 715, 717–18 (1952).

Certainly no one can or should argue with such goals or policies which are, of course, consistent with good planning. However, the Planning Board when it recommended reduced density at the subject property recognized it was dealing with an environmentally sensitive lot (i.e. one with some steep slopes which was divided by four feeder streams which ultimately flow into Big Brook, itself a feeder stream for the Swimming River Reservoir). For sure, it cannot be argued in that circumstance that the subject lot should be treated the same as upland or nearby properties which do not have these critical environmental constraints. *Albano v. Mayor & Tp. Of Wash.,* 194 *N.J.Super.* 265, 274, 476 *A.*2d 852, 856 (App.Div. 1984). Certainly the court would have a difficult time to sustain any conclusion that Township planners intended a direction regarding in-fill to apply to a 167 acre lot, particularly one separated from nearby higher density developments by natural features of the land as well as streets, etc.

As to the issue of prohibited fiscal zoning, at the very least, it is not clear that such theory retains much, if any, vigor.

So, *Burlington Cty. N.A.A.C.P. v. Mt. Laurel Tp.*, 92 *N.J.* 158, 314–15, 456 *A.*2d 390, 470–71 (1983), (hereafter Mt. Laurel II). Putting this modern notion aside, it was always understood that a municipality might not zone property for *purely* or *solely* fiscal reasons. *Oakwood at Madison, Inc. v. Township of Madison*, 72 *N.J.* 481, 619, 371 *A.*2d 1192, 1261 (1977). Rather, a legitimate purpose of zoning, as set forth in the Municipal Land Use Law, had to underlie or support the ordinance. *Bow & Arrow Manor v. Town of West Orange*, 63 *N.J.* 335, 343, 307 *A.*2d 563, 567 (1973): *N.J.S.A.* 40:55D–2. Certainly, plaintiffs' contentions as to the impropriety of the residential density allowed by Ordinance 1999–29 are difficult to understand in the factual pattern underlying this case. That is, we are dealing with property measuring at most 170 acres, while Marlboro Township contains, within its borders, over thirty square miles. No one today doubts that it is an important purpose of zoning to provide for the establishment of appropriate population densities that will contribute to the preservation of the environment. *N.J.S.A.* 40:55D–2(e). Certainly, the Township had the right in its development regulations to provide for open space. *N.J.S.A.* 40:55D–2(c). Indeed, the Supreme Court spoke approvingly of the concept of large lot zoning more or less at the same time it was considering Mt. Laurel issues. *See Home Builders League of So. Jersey, Inc. v. Tp. of Berlin*, 81 *N.J.* 127, 143, 405 *A.*2d 381, 390 (1979); *see* as well. *Mt. Laurel II*, supra, p. 315, 456 A.2d p. 471. New Jersey municipalities are entitled to provide for variety in development densities in keeping with environmental requirements. *N.J.S.A.* 40:55D–2(g).

■ To support its contentions as to fiscal zoning, plaintiffs emphasize isolated phrases in the Master Plan, but ignore the stated purpose of the ordinance (i.e. to protect and preserve water courses, including Big Brook). It has long been held that courts should look to the expressed purpose of an ordinance when assessing its validity. The concept of purpose is to be "distinguished" from motive. *Kirby v. Tp. Comm. Of Tp. Of Bedminster*, 341 *N.J.Super.* 276, 775 *A.*2d 209 (App.Div.2000). When there is a

valid zoning purpose that supports an ordinance, it may not be set aside merely because, at the same time, it benefits the municipality in a fiscal sense. *See Id.* Here, the court suspects that the Township has either satisfied, is attempting to satisfy, or at the very least has recognized the obligation to provide its fair share of housing opportunities for persons of low and moderate income. In that circumstance, there is certainly an obvious tension, as the Supreme Court identified in Mt. Laurel II, between the concept of inappropriate fiscal zoning relating to a relatively small portion of the Township, and the Municipal Land Use Law's approval of zoning for different densities as conditions allow, or suggest, throughout the municipality. Certainly, zoning at reduced densities might have its fiscal benefits for Marlboro Township. Under the circumstances of this case, however, such benefit forms no basis to overturn Ordinance 1999–29.

 As to plaintiffs' contentions regarding inconsistency between development as allowed pursuant to the SPCR II requirements and nearby developed properties, the Municipal Land Use Law recognizes that the drawing of district lines is the essence of zoning. *Lusardi v. Curtis Point Prop. Owners Ass'n,* 86 *N.J.* 217, 226, 430 *A.*2d 881, 885 (1981); *see also Bogert v. Washington Tp.,* 25 *N.J.* 57, 61, 135 *A.*2d 1, 3 (1957): *N.J.S.A.* 40:55D–2. Of course, there must be a reason or basis cognizable under the statute to treat vacant land differently than nearby developed lands. Here the property is marked by the confluence of streams which feed Big Brook which, in turn, cuts through plaintiffs' property. Further, and importantly, the site contains extensive fresh water wetlands. *N.J.S.A.* 13:9B–1. Plaintiffs' expert, Dr. Stephen Souza, in his testimony, opined that there might be as much as 43 acres of fresh water wetlands and stream corridors, although his report represented there were only 29.45 acres of wetlands and stream corridors at the property. Given such extensive acreage, whether 29 or 43 acres, the site requires extensive buffering to preserve the fresh water wetlands. Moreover, since the site includes Big Brook, the Township has used the planning or zoning

tool of a reduction in density to protect such waters, both at the subject site and elsewhere along Big Brook. Simply put, plaintiffs' lands are environmentally sensitive and require different treatment or zoning than neighboring developed properties.

Finally, plaintiffs argue even if defendant's purpose or goal in adopting the ordinance is valid, the means used (i.e. limiting the density of development to .43 dwelling units per acre) is unreasonable. *Pheasant Bridge Corp. v. Township of Warren, supra,* 169 *N.J.* 282, 290, 777 *A.*2d 334, 339 (2001). At the very best, from plaintiffs' perspective, a close question is presented.

Plaintiffs, for the most part, do not concede the goal or purpose that underlies the ordinance is worthy of consideration. Rather, plaintiffs argue that, at best, the purpose is pretextual, a smokescreen, so to speak, to allow defendants to limit the number of households and, thus, protect the Township's coffers. However, the expressed purpose of the ordinance was to protect streams, including big Brook. The presumption that requires the court to assume the ordinance was adopted for a proper purpose, or for a proper motive, as some courts have stated, *see Kramer, supra,* would not count for much if the court could so easily cast aside the Township's expressed reasons for adopting the ordinance. Here, notwithstanding plaintiffs' protestations to the contrary, the avowed purpose that motivated the Township in adopting the ordinance is supported by evidence amply set forth in the Master Plan, in the reports of the Township Planner, minutes of Township Council meetings, and otherwise in the records reviewed in this action.

No reasonable person could deny that the protection of water courses and sources of potable water is, indeed, a worthy public purpose. Certainly, the Federal government, in its adoption of the Clean Water Act. 33 *U.S.C.A.* 1251, et seq.; and the State government in its adoption of the Fresh Water Wetlands Act. *N.J.S.A.* 13:9B–1 et seq.; the Water Pollution Control Act, *N.J.S.A.* 58:10A–1 et seq.; the Safe Drinking Water Act. *N.J.S.A.* 58:12A–1 et seq.; and the Water Quality Planning Act. *N.J.S.A.*

58:11A–1 et seq.; recognized that development, be it residential or commercial, has the clear potential to destroy or, at the very least, degrade our sources of potable water. The Legislature has declared "... the maintenance of high-quality potable water is essential in order to safeguard the health and welfare of the people ..." *N.J.S.A.* 58:12A–2. Further, the Legislature has determined "... that the people ... have a paramount interest in the restoration, maintenance and preservation of the quality of the waters of the State for the protection and preservation of public health and welfare ..." Importantly, in the context of this case, the Legislature has further found that "... water quality is dependent upon factors of topography, hydrology, *population concentration* (emphasis mine), ... and that a Pollution Abatement Program should consider these natural and manmade conditions that influence water quality ..." *N.J.S.A.* 58:11A–2. Courts, as well, have noted and understood "that protection of streams and sources of water supply is an important public policy." *N.J. Bldrs. Assoc. v. Dept. of Environmental Protec.*, 169 *N.J.Super.* 76, 86, 404 *A.*2d 320, 325 (App.Div.1979). Finally, the Municipal Land Use Law specifically requires that land use regulations be utilized to protect "... potable water supply reservoirs from pollution or other degradation of water quality resulting from the development ... of surrounding land areas." *N.J.S.A.* 40:55D–38(13). Similarly, the Township Planning Board, in preparation of the Master Plan, was within its rights to consider and recommend zoning measures providing for the preservation and conservation of natural resources including water supply and wetlands. *N.J.S.A.* 40:55D–28b(8). Put simply and directly, the defendant Township and its Planning Board were charged with the responsibility of adopting, or amending, its Master Plan "... to guide the use of lands within the municipality in a manner which protects public health and ... promotes the general welfare." *N.J.S.A.* 40:55D–28a.

No citation is necessary to support the concept that non-point pollution emanating from residential development has the clear potential to detrimentally impact the Swimming River Reservoir

and, thus, significantly threaten the public health and welfare. Non-point pollution includes road asphalt, road salts, oil and gas drippings from cars, lawn fertilizers and similar deleterious substances.

Plaintiffs, of course, are correct in demanding that the court examine the means chosen by the Township to support this worthwhile goal or purpose. *Pheasant Bridge, supra.* That is, the means utilized must have some legitimate relationship to the goal or purpose sought to be achieved. *Schmidt v. Board of Adjustment, Newark,* 9 *N.J.* 405, 88 *A.2d* 607 (1952). When the means chosen are arbitrary, capricious or unreasonable as bearing no reasonable relation to the purpose, the ordinance must be overturned. *Bayshore Sew. Co. v. Dep't of Env. Protection, N.J.,* 122 *N.J.Super.* 184, 199, 299 *A.2d* 751, 759 (Ch.Div.1973). However, if the means chosen by the Township are at the least debatable, the ordinance must be upheld. *Id.*

Plaintiffs' experts offer the conclusion that there was no great difference as it concerned runoff and pollutant loading between the straight SPCR II zone (i.e. 80,000 square foot lots) and the runoff and pollution expected if the property were developed at R–30/20 densities. However, none of plaintiffs' experts analyzed the impact on runoff and pollutant loading if the property were developed using the SPCR II cluster option.

It is very important to note that all of the experts, on each side, agreed cluster development involves less land disturbance and less opportunity for the runoff of non-point pollution to actually reach the waterways in the first instance. That is, because the development is clustered or compressed, there is a reduction in linear footage of the roadway as well as a reduction in the linear footage of sidewalks, curbs, etc. Correspondingly, if cluster standards are used, it is reasonably expected there will be less miles of motor vehicle traffic and, consequently, less drippings of oil, gas and asbestos (from brake linings) from motor vehicles. As to the second aspect, the experts agreed that much of the pollutants will

drop off in the ground when the water is allowed to flow over undisturbed areas. In that way it will never reach Big Brook.

It is surely a fair conclusion, that use of cluster development standards, as per the SPCR II zone, will serve to provide better protection to Big Brook and, consequently, the Swimming River Reservoir. Certainly, as hereafter noted, the intensity of development (i.e. number of dwelling units) has its potential detrimental impact on the environment.

Plaintiffs argue that the Township Planner could not specifically cite to any study upholding low density development as a means or tool to protect sources of water supplies. Further, plaintiffs point to the testimony of the Township Engineer to the effect that the density of development does not matter as it concerns protecting the Big Brook from sources of non-point pollution.

As to the Township Planner, the court notes that although Mr. Joseph Layton expressed knowledge of studies dealing with the protection of waters commensurate with a reduction in density, indicating that such studies were developed in the 1960's, 1970's and 1980's, he could not recite the same by name. On the other hand, plaintiffs' planner, hydrologist and engineer could not cite to any study which concluded that density of development did not matter as it concerned protection of water supplies. Rather, each side offered merely their opinion to support the conclusions reached. Even plaintiffs' planner conceded reduction in density was a tool, albeit one he did not favor, in reducing pollutants loading into streams. From the court's perspective, a close examination of plaintiffs' proofs, as well as defendant's, provide more than ample support for defendant's decision to reduce density at the subject property, so long as the property is developed using cluster development standards, which provide for significant dedication of lands for conservation and passive recreation purposes.

Plaintiffs' hydrologist was forced to conclude the obvious point that as the intensity of development increases, water runoff increases. This increase in runoff, he further conceded, was accompanied by an increase in pollutant loading off of or from developed

property. In that light, it is not difficult for the court to conclude that the contrary must be true. That is to say, the lower the intensity of development, the less the runoff from the property and the less pollutants will flow into the stream. The Township engineer, as well as plaintiffs' engineer and planner, took the view that on site means could be used to control the flow of such excess waters (i.e. a detention basin might be used to slow down the drainage from the subject site and on-site facilities might be used to remove pollutants from the waters). Again, no studies, as opposed to personal opinions, supported any such conclusions. The Township's planner, on the other hand, opined that detention basins would not provide a satisfactory means to remove pollutants flowing into Big Brook. At best, from plaintiffs' perspective, the issue is debatable. In that circumstance, the court may not set aside the ordinance. *Gormley v. Lan*, 88 *N.J.* 26, 438 *A.*2d 519 (1981).

A decrease in density, at the same time using cluster provision of SPCR II, allows appropriate opportunity for the water runoff from developed properties to flow over undisturbed lands dropping its pollutant load before it ever enters the drainage system which leads to Big Brook and, thereafter, the Swimming River Reservoir. Since the property is situated so close to Big Brook, a major feeder stream of the Swimming River Reservoir, reductions in density are called for. For the same reason, the property must be developed using standards for cluster development as set forth in Marlboro Township's ordinance.

Both plaintiffs and the court are troubled by the fact that Marlboro Township allowed an increase in density for the SPCR zone situated downstream from the subject site, the court believes such development is described as Marlboro Manse. Certainly, Marlboro authorities made an environmentally poor choice when they sought to satisfy in part the Township's Mt. Laurel obligation in this fashion. That is, using property situated in such an environmentally sensitive area for this purpose was not enlightened. However, the court is not unmindful of the significant pressures

which have long confronted Marlboro Township (i.e. the obligation to provide housing opportunities for persons of low and moderate income). Indeed, judicial notice can be taken of the fact that Marlboro Township has been sued over the course of several decades on the grounds it has not satisfied its obligations. Notwithstanding these pressures, however, the Township erred when it allowed for such increase in density concerning property that abuts Big Brook. Indeed, if presented with an appeal from such approvals, it would be difficult to sustain same, bearing in mind that courts have long counseled that the need to provide housing opportunities for persons of low and moderate income need not lead to poor planning. *Mt. Laurel II, supra,* p. 219, 456 A.2d pp. 420–21. This court, however, should not perpetuate the Township's error. Rather, such increase in density regarding property in this close proximity to Big Brook should be limited or confined to the Marlboro Manse property.

It may be that in some SPCR II zones in the Township, the property might not be in one ownership (large enough) to allow development using the standards of cluster development. However, when such properties comply with the minimum acreage now set forth in the Township ordinances, they must be developed utilizing cluster development standards. Any other course would allow incursion into wetlands, multiple stream crossings, improvements within yards that would lead to significant runoff and subsequent pollutants running into Big Brook. If the Township truly wishes to protect Big Brook and other streams bound by any SPCR zone, it must only allow development utilizing cluster standards in these sensitive areas.

Thus, as it concerns plaintiffs' property and, indeed, any property within the Township having sufficient acreage, as defined in the ordinance, the SPCR zone is upheld provided that cluster standards are utilized. This court will retain jurisdiction while the Township amends its ordinance.

Thus, for reasons stated, plaintiffs' complaint is dismissed.