882 A.2d 388 (2005)
380 N.J. Super. 325
NEW JERSEY FARM BUREAU, INC., The United Farmers and Landowners of East Amwell, David C. and Shirley Ann Bond, Roger K. and Alice Everitt, Irvin E. and Vilma M. Hockenbury, Fred C. Vandoren, Abram and Hermine Vandoren, Christopher H. Stahl, Jr., Estate of Silvio Calvalier, Frederick E. III and Susan A. Johnston, Perehinys Farm and Mary Perehinys, Plaintiffs-Appellants,
v.
TOWNSHIP OF EAST AMWELL and Township of East Amwell Planning Board, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued January 25, 2005.
Decided September 22, 2005.
Thomas Daniel McCloskey, Lawrenceville, argued the cause for appellants (Greenbaum, Rowe, Smith, Ravin, Davis & Himmel, attorneys; Peter A. Buchsbaum and Mr. McCloskey, of counsel; Michele Gibson and Maja Obradovic, Woodbridge, on the brief).
Howard D. Cohen, Lawrenceville, and Richard P. Cushing, Clinton, argued the cause for respondents (Parker, McCay & Criscuolo, attorneys for respondent Township of East Amwell, and Gebhardt & Kiefer, attorneys for respondent Township of East Amwell Planning Board; Mr. Cohen and Mr. Cushing, of counsel and on the joint brief; Edward P. Abbott, Somerset, on the joint brief).
John P. Sheridan, Jr., Morristown, argued the cause for amicus curiae New *389 Jersey Future, Inc. (Riker, Danzig, Scherer, Hyland & Perretti, attorneys; Mr. Sheridan, of counsel and on the brief).
Before Judges SKILLMAN, GRALL and RIVA.
The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
Plaintiffs, a state organization representing the interests of farmers (New Jersey Farm Bureau), an unincorporated association of farmers residing in the Township of East Amwell (United Farmers and Landowners of East Amwell), and several individual farmers who own land in East Amwell, appeal a judgment upholding an East Amwell ordinance (Ordinance 99-06) that increased the minimum lot size in the municipality's agricultural district from three to ten acres. The ordinance has a lot averaging provision that permits residential lots as small as 1.5 acres and an "open land" subdivision option, which allows a 50% density bonus for cluster development on 1.5 acre residential lots in exchange for the landowner's promise to preserve the remainder as agricultural land. This ordinance was one of several initiatives designed to preserve the agricultural character of the district, which comprises approximately two-thirds of the municipality.
East Amwell is a rural municipality of twenty-eight square miles (18,000 acres) located in southeastern Hunterdon County. Its population in 1990 was 4332. It has one village, Ringoes, consisting of about 250 homes and businesses, and several hamlets, including Linvale, Reaville, and Wertsville, which are very small crossroads communities. All of these communities have been entered on the New Jersey Register of Historic Places.
Two major roads, Route 31 and Route 202, pass through the northwest corner of East Amwell near the village of Ringoes. Most of the municipality's roads are narrow, winding cartways, with a number of single lane bridges.
More than 90% of East Amwell is in two zones: the Sourland Mountain district, located in the southern part of the municipality, which consists of approximately 5523 acres; and the Amwell Valley Agricultural (AVA) district, located in the northern part of the municipality, which consists of approximately 11,000 acres. The trial judge, Judge Hoens, who toured the area with counsel, described the AVA district as "a place of breathtaking beauty, comprised overwhelmingly of large parcel farms and fields dotted with barns and silos stretching virtually as far as the eye can see."
Over 80% of the AVA district consists of prime farmland or soils of state-wide importance, which are classified by the United States Department of Agriculture (USDA) as soils that are most productive for sustainable agriculture. Seventy percent of all land in East Amwell (12,500 acres) is assessed as farmland, including 68% of the land in the AVA district.
In June 1992, the New Jersey State Planning Commission released the New Jersey State Development and Redevelopment Plan (State Plan), which was intended to serve as a guide for policy decisions at all levels of government to achieve the goals of the State Planning Act, N.J.S.A. 52:18A-196 to -207. A major goal of the 1992 State Plan was to prevent further encroachment into rural areas as a result of suburban sprawl. Since 1950, hundreds of thousands of acres of rural agricultural lands have been converted into sprawling subdivisions. The State Plan concluded that this is a "pattern of development that destroys the character of the *390 cultural landscape, is inefficient in terms of public facilities and services and devoid of the sense of place that has long defined the character of life in New Jersey."
In establishing state-wide planning objectives, the State Plan divided New Jersey into five planning areas: the Metropolitan Planning Area (PA1); the Suburban Planning Area (PA2); the Fringe Planning Area (PA3); the Rural Planning Area (PA4); and the Environmentally Sensitive Planning Area (PA5). The Rural Planning Area also included a subcategory, the Rural-Environmentally Sensitive Planning Area (PA4B). The AVA district is located in PA4 and PA4B planning areas. The State Plan recommends that growth in PA4 and PA4B areas be confined to "centers," which are compact forms of development.
In August 1998, the East Amwell Planning Board issued a land use plan amendment for the AVA district and a reexamination report. The overriding goal stated in the land use plan amendment was to preserve farmland. The Planning Board concluded that the three-acre zoning in effect at that time would not meet East Amwell's goal of preserving large tracts of farmland. Citing the 1995 Master Plan Consistency Review prepared by the Office of State Planning, the Planning Board concluded that "the 3 acre zoning currently provided in the Amwell Valley District is a prescription for suburban residential sprawl and over time will signal the end of agricultural land uses in East Amwell." The Board noted that "[r]esidential densities should be low enough to be compatible with farming, and to discourage land speculators, but not so low as to substantially affect land equity." The Board also stated even mandatory clustering would not "preserve large blocks of contiguous acreage for long term agricultural production." The Board stated that "professional literature indicates that a minimum lot size of 20 to 25 acres is appropriate agricultural zoning in a moderate strength farming area." However, the proposal that East Amwell rezone the AVA district for one unit per twenty-five acres met strong opposition from farmers, so the Board ultimately decided that the area should be zoned for one unit per ten acres.
The reexamination report reaffirmed East Amwell's commitment to the State Plan's recommendations to preserve farmland and discourage development in Planning Areas 4 and 4B, except in centers. The report urged adoption of the zoning changes recommended in the land use plan, adding that recent subdivisions were "destructive" of the municipality's rural character and that three-acre zoning would not effectively preserve valuable farmland. Accordingly, the report recommended ten-acre zoning, with lot-size averaging that would permit dwellings on lots as small as 1.5 acres, and an "open lands ratio" provision that would permit a density bonus (one unit per 6.7 acres rather than one unit per 10 acres) provided 75% of the overall tract was restricted to agricultural use.
An ordinance to implement these recommendations was introduced shortly thereafter. However, a sufficient number of landowners in the AVA District signed a petition protesting the ordinance to trigger N.J.S.A. 40:55D-63, which requires a two-thirds majority vote of the governing body to adopt an ordinance that is the subject of a protest. Subsequently, three members of the governing body voted in favor and two against the ordinance, resulting in its defeat. In the following election, one governing body member who had voted against the ordinance was not re-elected, and in March 1999 a new ordinance rezoning the AVA district for one-unit per ten-acres was adopted. This ordinance permits two cluster development options: (1) *391 lot size averaging, which allows homes on one-and-one-half acres provided that the overall density remains 0.1 unit per acre; or (2) "open lands ratio zoning," which permits a 50% density bonus (0.15 units per acre) provided 75% of the tract is deed restricted for agricultural use and at least 65% of the designated open lands have prime soils or soils of state-wide importance.
Two actions challenging the validity of the ordinance were subsequently filed, one by the previously identified plaintiffs and the other by an owner of substantial properties in East Amwell. The case was tried over a period of twenty-seven days.
On August 1, 2002, Judge Hoens issued a comprehensive written opinion upholding the validity of the ordinance. She concluded that the rezoning provided thereunder was reasonably related to the objectives of encouraging agricultural uses and preserving farmland:
The plaintiffs further attack Ordinance 99-06 on the theory that the zoning scheme it creates will not in fact achieve the purpose of encouraging agriculture or preserving farmland. . . . The only way in which to actually understand this aspect of the plaintiffs' arguments is to first appreciate the reasons expressed by the Township . . . for the creation of the three part approach embodied in Ordinance 99-06. Distilled down to its heart, the idea behind Ordinance 99-06. . . is to preserve farmland and promote active agriculture in new and creative ways. The heart of that analysis is the focus on 10 acre zoning as of right. While [East Amwell's planning consultants] originally hoped to create 25 acre zoning of right based upon a theory that 25 acres is the minimum size needed for a working farm for traditional farming pursuits engaged in and preferred by plaintiffs, for example, that approach was abandoned in 1998 almost certainly in reaction to the vigorous objection by the Farm Bureau and the United Farmers group. At the time the approach then changed to 10 acre zoning of right, but the selection of 10 acres as a minimum lot size for subdivision of a larger parcel was not arbitrary.
. . . The hope of the Planners in creating the 10 acre zoning aspect of Ordinance 99-06 was to create parcels of a size that the majority of prospective purchasers would intentionally utilize in a fashion consistent with the tax savings to be achieved through participating in the farmland assessment program and that the end result would be a series of parcels devoted to a variety of agricultural pursuits. In particular, the Planners looked at uses for land which would qualify for farmland assessment and which would be consistent with the overall agricultural character of the community but which the plaintiffs might not regard as true farming pursuits. The suggestion of the Planners, therefore, was that activities including specialty vegetable farms or horse farms or even what might otherwise be described as exotic animal farming would, while not necessarily identical to traditional farming pursuits, nonetheless constitute the kind of agricultural activity that today represents a vision for a future for East Amwell.
. . . The Planners also hoped, however, that by altering the open lands ratio and the lot averaging options, that they might be able to encourage somewhat denser development consistent with creating at the same time large contiguous parcels devoted in perpetuity to agriculture. The Planners thus were willing to give up to some extent enormous farm tracts in favor of significantly sized farm tracts located on the best agricultural *392 soils and bordered by small somewhat denser developments. . . .
It is clear that East Amwell will not retain its overall agricultural character if every one of the parcels now owned by a named plaintiff in this litigation, in fact, takes advantage of the open lands ratio or the lot averaging option. Nor will it retain its overall agricultural character if every lot takes advantage of the 10 acre zoning of right. But the hope of the Planners and Plan that they devised is designed to press such development as may occur into an overall agricultural look and reduce at the same time the kind of development even the plaintiffs concede was found to be unattractive.
. . . .
The 10 acre minimum is indeed rationally related to the goal of preservation of agriculture at least if one views agriculture as something more complex in today's world than vast farms of waving grain. Just as farming has moved in New Jersey from large feed lots or chicken farms to dairy farms and fields of crops readily marketable, so too it is appropriate to look to future trends in farming as the Planners did here in an effort to encourage new farmers to make new investments even if that means somewhat smaller farms than traditionally preferred. The contention that the 10 acre minimum will permit the great majority of parcels which are divided as of right to qualify for farmland assessment and thus to be required to engage in some variety of farming is certainly rational and a reasonable means of achieving the goal of preserving agriculture. The suggestion of the open lands ratio that the good agricultural soils be retained for agriculture with slightly increased development consistent with creation of individual septic is rationally related to the preservation of agriculture. The rejection of [an] alternative wastewater [system] as a lynchpin for far higher density development is rationally based on the experience of the Township as it sought to determine how and where to achieve that goal. For all of these reasons, Ordinance 99-06 is rationally related to the purposes of the MLUL it asserts it will achieve.
Judge Hoens also concluded that the rezoning of the AVA district was consistent with the State Plan:
[T]he evolution of the various Master Plans over time focused not only on farmland preservation and agricultural pursuits as a worthwhile goal for the Township, but also did so in an effort to comply with the vision of the State Plan. Certainly it is true that the 1992 State Plan includes a variety of preferred techniques for addressing growth in areas such as East Amwell. The techniques utilized for Planning Area 4 ("PA4"), inclusive of East Amwell, are best described as an effort to channel such growth as may occur into relatively dense pockets with a minimal impact on the character of the surrounding countryside. But it would be inappropriate to focus solely on the goals and strategies designed for PA4 without recognizing the overarching goal of the State Plan as expressed in 1992 is to continue revitalizing urban areas, continue channeling growth toward areas already developed and merely to accommodate growth in terms of housing and other types of development in places like East Amwell. The plaintiffs view accommodation as if it were a proactive requirement to create centers or pockets of high density development rather than seeing it for what it is. Accommodation in the State Plan cannot in fairness be interpreted to mean that a community such as East Amwell has an obligation *393 to identify places where pockets of development will be created but rather must be seen as a goal of ensuring that such development as does occur consistent with historical development trends is not foreclosed.
While upholding the ordinance, Judge Hoens noted that plaintiffs had asserted constitutional claims and a federal statutory claim that had been "bifurcated." The judgment memorializing her decision states:
As to the bifurcated claims, said claims be and the same are hereby dismissed without prejudice, the court noting the written consent of counsel to the relief provided in this paragraph. In the event an appeal is filed by plaintiffs from the Judgment . . . and said appeal shall result in a reversal, modification or remand of said Judgment, plaintiffs may reinstate the bifurcated claims without the need for filing a new complaint.
Thus, the judgment appears to constitute a final disposition of the case, subject to reinstatement of the bifurcated claims in the event of a reversal, modification or remand with respect to the claims adjudicated in the August 1, 2002 opinion.
Plaintiffs appeal from the judgment. The plaintiffs in the consolidated action have not appealed.
On their appeal, plaintiffs present the following arguments:
I. THE TRIAL COURT ERRED IN UPHOLDING ORDINANCE 99-06, SINCE PLAINTIFF DEMONSTRATED THAT THE ORDINANCE IS AN EXCLUSIONARY ZONING SCHEME ADOPTED WITH EXCLUSIONARY ANIMUS.
II. THE TRIAL COURT ERRED IN UPHOLDING ORDINANCE 99-06 SINCE THE EVIDENCE ESTABLISHED THAT IT CONSTITUTES A VIOLATION OF THE MOUNT LAUREL I REQUIREMENT OF MUNICIPALITIES TO PROVIDE FOR A VARIETY AND CHOICE OF HOUSING.
III. THE TRIAL COURT ERRED IN UPHOLDING ORDINANCE 99-06 SINCE THE EVIDENCE ESTABLISHED THAT THE ORDINANCE WAS ADOPTED TO SUPPRESS FARMLAND VALUES.
IV. THE TRIAL COURT ERRED IN FINDING THAT ORDINANCE 99-06 ADVANCES THE PURPOSES OF THE MLUL BECAUSE IT IS CONSISTENT WITH THE STATE PLAN.
V. THE TRIAL COURT ERRED IN FINDING THAT PLAINTIFF FAILED TO PROVE A DIMINUTION IN VALUE OF THEIR PROPERTY AS THE RESULT OF THE ADOPTION OF ORDINANCE 99-06.
VI. ORDINANCE 99-06 IS PATENTLY INCONSISTENT WITH THE 1993 MASTER PLAN (THE "PLAN") AND THE 1998 LAND USE PLAN AMENDMENT (THE "AMENDMENT"), AND WAS ADOPTED WITHOUT APPROPRIATE PUBLIC HEARING ON MASTER PLAN CHANGES, OR NOTICE TO THE PUBLIC.
VII. THE TRIAL COURT'S DECISION IS CONTRARY TO THE OVERWHELMING EVIDENCE THAT ORDINANCE 99-06 WILL NOT ACHIEVE ITS STATED GOAL OF PRESERVING AGRICULTURE.
VIII. THE TRIAL COURT PREMISED ITS UPHOLDING OF *394 THE 1.5 ACRE LOT SIZE UPON THE CLEARLY ERRONEOUS FINDING THAT THE TOWNSHIP'S REJECTION OF AN ALTERNATE WASTEWATER SYSTEM WAS REASONABLE.
We reject these arguments and affirm the judgment dismissing plaintiffs' complaint substantially for the reasons set forth in Judge Hoens' comprehensive written opinion. The arguments that are not addressed in her opinion either were not presented to the trial court and therefore are not properly before us, Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973), or are clearly without merit, R. 2:11-3(e)(1)(E). We add these brief supplemental comments regarding some of plaintiffs' points.
Plaintiffs argue that Ordinance 99-06 is invalid because it embodies "exclusionary zoning." In support of this argument, plaintiffs rely upon the holding of S. Burlington County N.A.A.C.P. v. Twp. of Mount Laurel (Mount Laurel I), 67 N.J. 151, 187, 336 A.2d 713, appeal dismissed and cert. denied, 423 U.S. 808, 96 S.Ct. 18, 46 L. Ed.2d 28 (1975), that "a developing municipality . . . must, by its land use regulations, make realistically possible the opportunity for an appropriate variety and choice of housing for all categories of people who may desire to live there, of course including those of low and moderate income." However, even assuming East Amwell would have been classified as a "developing municipality" under Mount Laurel I, which seems doubtful, see Glenview Dev. Co. v. Franklin Twp., 164 N.J.Super. 563, 567-68, 576, 397 A.2d 384 (Law Div.1978),[1] this holding was superseded by S. Burlington County N.A.A.C.P. v. Twp. of Mount Laurel (Mount Laurel II), 92 N.J. 158, 211, 456 A.2d 390 (1983), which states:
While Mount Laurel I discussed the need for "an appropriate variety and choice of housing," 67 N.J. [at] 179 [336 A.2d 713], the specific constitutional obligation addressed there, as well as in our opinion here, is that relating to low and moderate income housing. Id. All that we say here concerns that category alone; the doctrine as we interpret it has no present applicability to other kinds of housing.
Therefore, under Mount Laurel II, once a municipality discharges its obligations regarding housing for low and moderate-income households, which East Amwell has concededly done, it has no constitutional obligation to provide through zoning for a variety of other forms of housing.
The Court in Mount Laurel II also held that although every municipality has an obligation to provide a realistic opportunity through its zoning for decent housing for its resident poor, the constitutional duty to meet a regional need applies only to municipalities, or portions thereof, that are in growth areas. Id. at 214-15, 456 A.2d 390. "This obligation, imposed as a remedial measure, does not extend to those areas where the SDGP [the predecessor to the State Plan] discourages growth  namely, open spaces, rural areas, prime farmland, conservation areas, limited growth areas, parts of the Pinelands and certain Coastal Zone areas." Id. at 215, 456 A.2d 390. "Municipalities consisting largely of conservation, agricultural, or environmentally sensitive areas will not be required to grow because of Mount Laurel." Id. at 219, 456 A.2d 390. Once a municipality has satisfied its fair share, the "Mount Laurel doctrine will not restrict other measures, including large-lot . . . zoning, that would maintain its beauty and *395 communal character." Id. at 219-20, 456 A.2d 390. If a municipality meets its affordable housing obligations, "the Mount Laurel doctrine requires it to do no more." Id. at 260, 456 A.2d 390. The Court also stated:
The Constitution of the State of New Jersey . . . does not require suburban spread. It does not require rural municipalities to encourage large scale housing developments. It does not require wasteful extension of roads and needless construction of sewer and water facilities for the out-migration of people from the cities and the suburbs.
[Id. at 238, 456 A.2d 390.]
The record in this case clearly shows that the AVA district in East Amwell is a rural area that the municipality may preserve for agricultural uses consistent with the Mount Laurel doctrine as explained in Mount Laurel II.
We also note that the prior decisions of this court recognize that although the State Plan's designation of an area as a Rural Planning or Environmentally Sensitive Planning Area is not dispositive of the validity of large-lot zoning designed to preserve the area's rural character, these designations are supportive of the reasonableness of such zoning. See Kirby v. Twp. Comm. of Bedminster, 341 N.J.Super. 276, 286-89, 775 A.2d 209 (App.Div.2000); Mount Olive Complex v. Twp. of Mount Olive, 340 N.J.Super. 511, 540-45, 774 A.2d 704 (App.Div.2001), remanded on other grounds, 174 N.J. 359, 807 A.2d 192 (2002); Sod Farm Assocs. v. Springfield Twp. Planning Bd., 298 N.J.Super. 84, 97-98, 688 A.2d 1125 (Law Div.1995), aff'd, 297 N.J.Super. 584, 587-88, 688 A.2d 1058 (App.Div.1996), certif. denied, 149 N.J. 36, 692 A.2d 49 (1997). Indeed, Kirby sustained one unit per ten acre zoning similar to the zoning in the AVA district in comparable circumstances. See also Gardner v. N.J. Pinelands Comm'n, 125 N.J. 193, 593 A.2d 251 (1991) (upholding forty-acre minimum lot size with mandatory clustering in Pinelands). The record of the lengthy trial before Judge Hoens demonstrates that the AVA district in East Amwell is a quintessential agricultural community that the State Plan properly designated as a Rural Planning Area and that Ordinance 99-06 is reasonably designed to preserve that rural character.
Affirmed.
NOTES
[1] This trial court decision was one of the cases involved in the Mount Laurel II appeal.